UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JAMES E. PHILLIPS, Plaintiff, v. E. KNOTTS, et al., Defendants. | ) | No. 1:23-cv-01561-JRO-TAB |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff James E. Phillips, an inmate within the Indiana Department of Correction ("IDOC"), brought this action against IDOC Defendants Caseworker Knotts, Officer Tumulty, and Sgt. Maynard alleging that his First and Eighth Amendment rights were violated while he was housed at Pendleton Correctional Facility ("Pendleton"). Phillips has moved for summary judgment, dkt. [44], and Defendants have filed a cross-motion for summary judgment, dkt. [47].[1] For the reasons below, Defendants' motion, dkt. [47], is **GRANTED** and Phillips's motion, dkt. [44] is **DENIED**.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and

[1] Although the Court interprets Defendants' motion as a cross motion for summary judgment, they have failed to follow proper summary judgment procedure and only cursorily cite or reference Phillips's brief. In future cases, counsel's failure to follow the Court's procedures may result in the Court summarily striking their briefs from the docket.

that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must consider only the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the assertion by citing to the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in that matter being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary

judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003).

## II. FACTUAL BACKGROUND

The following facts are not in dispute except as noted.

### A. The Parties

At the time relevant to his claims, Phillips was incarcerated in G Cellhouse at Pendleton. Dkt. 48-1 at 8. Defendant Emily Knotts was a Casework Manager at Pendleton. Dkt. 48-2 at 1. Defendant Kaycee Tumulty was a Correctional Officer at Pendleton, and Defendant Zyon Maynard was a Correctional Sergeant at Pendleton. Dkts. 48-3 at 2; Dkt. 48-4 at 2. Sgt. Maynard and Officer Tumulty worked the night shift between the hours of 6 p.m. and 6 a.m. Dkts. 48-3 at 1; Dkt. 48-4 at 1.

### B. The Incident

Caseworker Knotts testified that one of her job duties at Pendleton was passing out legal mail under the following procedure: inmates were moved to a legal booth, their restraints were removed, they were presented with their legal mail, they signed to accept their legal mail, they viewed staff opening their legal mail, a caseworker inspected the mail for contraband and copied needed documents, and inmates were then given a copy of their mail. Dkt. 48-2 at 1.

On June 19, 2023, Phillips was placed in a legal booth to receive his legal mail. Dkt. 48-1 at 17. It is undisputed by both parties that while in the legal booth, Phillips requested Caseworker Knotts to copy additional documents, dkt.

48-2 at 2, specifically blue "request for interview" slips to staff that had not yet received a staff response, dkts. 45 at 1, 48-2 at 2. Caseworker Knotts testified that she told Phillips that she could not make copies of the blue request slips that did not yet have a response. Dkt. 48-2 at 2. Caseworker Knotts told Phillips that he instead could make a request to the facility's law library for copies of those documents. *Id.* Caseworker Knotts also testified that after she told Phillips he could not make the requested copies, Phillips became angry, uncooperative, and argumentative. Dkt. 48-2 at 2. Phillips alleges that Caseworker Knotts denied his request for copies because of his previous civil cases against her coworkers and because the content of his legal mail was related to his various civil complaints against IDOC. Dkt. 45 at 1.

The video of the incident is consistent with Caseworker Knotts testimony. Phillips can be seen handing the blue request slips to Caseworker Knotts, who then reviewed the documents. Dkt. 48-6 (Legal Booth Video at 0:05:04–0:11:05). Phillips appeared to become upset a few seconds later. *Id.* (Legal Booth Video at 0:05:04–0:11:05); (Legal Booth Video at 0:14:45–0:15:20). While Phillips was in the legal mail booth, Caseworker Knotts made copies of at least one blue request form for him. *Id.* (Legal Booth Video at 0:05:04–0:11:05).

Phillips testified in his deposition that after Caseworker Knotts denied his request for copies, he asked "to speak with her superiors and her—and her officers, and I have a constitutional right to—to speak with her supervisors to—to speak with any officer that's in authority, especially if I'm having a problem pertaining to my legal issues." Dkt. 48-1 at 9. Caseworker Knotts testified that

she informed Phillips that her supervisor had not yet arrived at the cellhouse, but that she would inform her supervisor of the situation when he arrived on shift and direct him to Phillips. Dkt. 48-2 at 2.

Phillips stated in his deposition that after he requested to see Caseworker Knotts's supervisor, Officer Tumulty and Sgt. Maynard told him that he could not speak to a supervisor and threatened him with OC Spray. Dkt. 48-1 at 14.

Caseworker Knotts testified that she then gave Phillips multiple orders to submit his hands for mechanical restraints so that he could be taken from the legal booth and returned to his cell. Dkt. 48-2 at 2. When asked if Caseworker Knotts or the officers gave him a command prior to deploying OC spray, Phillips testified, "I do not recall that. I do not recall that at any point in time any of the defendants saying that." *Id.* at 14. In his reply brief, Phillips argues that he "never refused to be placed in restraints at any time" and that there was "no need for [him] to be placed in restraints due to already being locked in a cell." Dkt. 57 at 3. From the video, Caseworker Knotts can be seen with handcuffs and a lead while communicating with Phillips in the legal mail booth, Dkt. 48-6 (Legal Booth Video at 0:15:30–0:21:10). Phillips appeared upset and did not turn and submit his hands for restraints. *Id.*

Officer Tumulty and Sgt. Maynard testified that after several minutes of refusing to submit to mechanical restraints and remaining argumentative, Phillips was given multiple warnings that his failure to comply would result in the use of OC Spray. Dkts. 48-3 at 2; 48-5 at 3, 5. After he failed to comply, Caseworker Knotts then deployed a one-second burst of OC to Phillips. Dkt. 48-

6 (Legal Booth Video at 0:21:10–0:22:50). Officer Tumulty was not present at the legal mail booth when Caseworker Knotts deployed OC Spray. Dkt. 48-3 at 2.

Following the one-second burst of OC Spray, Phillips continued to refuse to submit to restraints to be removed from his cell. Dkt. 48-2 at 2. However, before shift change, Phillips stated he was ready to be returned back to his cell. *Id.* at 2-4. Shortly after shift change, he was placed in restraints, removed from the legal mail booth, and returned to his cell by non-party officers assigned to the other shift. *Id.* Caseworker Knotts and Officer Tumulty did not participate in escorting Phillips to his cell from the legal mail booth. Dkts. 48-2 at 3, 48-3 at 2. Once Phillips was back in his cell, Sgt. Maynard did not have further interactions with him that day. Dkt. 48-4 at 2.

Phillips stated in his deposition testimony that he was not provided any assistance or a shower to decontaminate after he was maced nor offered medical attention. Dkt. 48-1 at 17–19. The IDOC incident report disputes this and notes that, for Phillips's response after the incident, "decontamination shower refused." Dkt. 48-5 at 3. Phillips received medical attention approximately seven to nine days after the incident, and he testified that he suffered only from blurred vision, which medical staff stated was a temporary symptom from the spray. Dkt. 48-1 at 31–32.

Phillips's cell had a sink with running water. Dkt. 48-2 at 2. Inmates in G Cellhouse were offered showers multiple times per week, and at least as often as every third day. *Id.* at 3. Following the incident, Caseworker Knotts wrote a Report of Conduct for Phillips for interfering with staff due to his behavior and

refusal to be removed from the legal mail booth, which impeded staffs' ability to complete their duties. *Id.* Phillips contends that if he was refusing a direct order, he should have received a conduct report with that disciplinary violation.

## III. DISCUSSION[2]

### A. Eighth Amendment Excessive Force Claims

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts often consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the

[2] Phillips's oversized briefing on his motion for summary judgment includes facts and argument wholly unrelated to the claims in this case and other "facts" that are merely conclusory legal statements. His briefing is a narrative account devoid of discrete factual organization and does not contain numbered paragraphs, or even any paragraphs at all. Rather, his subheading for the majority of his briefing is titled "statement of material facts not in dispute and arguments," which is a combination of legal statements, caselaw, and facts without any citations. His noncompliance with Local Rule 56-1(a) and Rule 56(c) undermines the Court's efficient evaluation of the record. The Court does not consider any argument that is not supported properly by admissible evidence. *See, e.g., Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough.") (cleaned up). The Court does consider Plaintiff's factual assertions when properly cited with evidence.

> extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." These factors are not exhaustive. Ultimately, "[w]hat matters—and what will generally be the decisive factor in cases such as this—is the mindset of the individual applying the force." *Whitaker v. Dempsey*, 144 F.4th 908, 922 (7th Cir. 2025) (quoting *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009)). To survive summary judgment, the record must allow a reasonable jury to find that a defendant "maliciously and sadistically inflicted pain." *Id.*; *accord Whitley*, 475 U.S. at 322 (a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain.").

"[C]orrectional officers receive special deference in their approach to restoring or maintaining order and discipline." *Smith v. Kind*, 140 F.4th 359, 368 (7th Cir. 2025) (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979), *Whitley v. Albers*, 475 U.S. 312, 322 (1986), and *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). "That deference applies . . . to preventative measures intended to avoid future disturbances." *Id.* (citing *Whitley*, 475 U.S. at 322). It is not cruel and unusual punishment to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). A prison officer may use small amounts of pepper spray to compel a disobedient prisoner to leave

a cell. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate and refused to comply with order to leave cell, use of pepper spray was justifiable). But "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270.

The Seventh Circuit in *Lewis v. Downey* noted that the issuance of a warning is an additional factual consideration when judging the constitutionality of the use of a chemical spray to be considered alongside the *Whitley* factors. 581 F.3d at 477; *see also id.* ("The 'use of the substance (tear gas) in small amounts may be a necessary prison technique if a prisoner refuses *after adequate warning* to move from a cell or upon other provocation presenting a reasonable possibility that slight force will be required.'" (emphasis added) (quoting *Spain v. Procunier*, 600 F.2d 189, 195 (9th Cir. 1979))). Indeed, the Seventh Circuit has "approved the use of chemical agents, including mace and tear gas, 'when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners,'" though it has cautioned that the "force could not be 'exaggerated or excessive' *and should generally follow 'adequate warning[s].'*" *Lewis*, 581 F.3d at 479 (emphasis added) (quoting *Soto*, 744 F.2d at 1270–71).

This case relates largely to Phillips's allegations that Defendants used excessive force against him on June 19, 2023. The summary judgment record contains video of the incident. "[W]here a reliable videotape clearly captures an event in dispute and blatantly contradicts one party's version of the event so that

no reasonable jury could credit that party's story, a court should not adopt that party's version of the facts for the purpose of ruling on a motion for summary judgment." *McCottrell v. White*, 933 F.3d 651, 661 n.9 (7th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

It is clear from the video that Phillips argued with officers for more than six minutes while Caseworker Knotts held a lead in front of his cell, and numerous officers spoke to Phillips while also holding a lead. Dkt. 48-6 (Legal Booth Video at 0:15:30–0:21:10). There is no dispute that Phillips was ordered to cuff up, and Phillips never at any point attempted to put his hands through the cuff port to cuff up during this period. *Id.* After Caseworker Knotts unholstered her OC spray but before she administered it, her actions depicted in the video are consistent with giving an order that Phillips refused to comply with. Dkt. 48-6 (Legal Booth Video at 0:21:01–0:21:33). The evidence is consistent with Caseworker Knotts providing an implicit warning to Phillips that OC spray might be used if he continued to refuse compliance with direct orders.

Moreover, Phillips admitted in his deposition that all three Defendants threatened Phillips "with force with a chemical agent" after his request for copies was denied. However, the timing and precise reason for such threats is unclear. Dkt. 48-1 at 10–11, 14, 30. There is no evidence in the record clearly establishing that Caseworker Knotts or the other officers stated in so many words that failure to cuff up would be the basis for the use of OC spray. The video does not have audio, and Phillips testified that he could not recall if Caseworker Knotts and officers asked him to comply with any orders before threatening to spray him.

However, all IDOC defendants testified that he was refusing to cuff up prior to the use of force. And again, there is no dispute that Defendants threatened to use OC spray, generally.

Regardless of whether the evidence demonstrates that Caseworker Knotts (or any other Defendant) gave a warning (either explicit or implicit) prior to use of the OC spray, the application of *Whitley* factors demonstrates that Caseworker Knotts was not otherwise malicious or sadistic in her use of force.

**1. Need for application of force**

This factor weighs in Caseworker Knotts's favor. "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Soto*, 744 F.2d at 1267. From review of the video evidence, Phillips did not comply with an order to cuff up after reviewing his legal mail, and he himself testified that he was arguing with officers for an extended amount of time because he believed it was his constitutional right to see a supervisor rather than return to his cell. Dkts. 48-1 at 8, 48-6 (Legal Booth Video at 0:15:30 – 0:21:10). Whether an express or implicit warning was given prior to use of the OC spray, the record is undisputed that Phillips was ordered to cuff up and did not comply.

**2. Relationship between the need and amount of force**

This factor also weighs in Caseworker Knotts's favor. It is not cruel and unusual punishment to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners." *Soto*, 744 F.2d at 1270. Caseworker Knotts used only

approximately one or two seconds of OC spray, and after that, other officers took control of the situation. Dkt. 48-2 at 3. Further, she did not deploy further force after the initial burst and officers waited many minutes for Phillips to comply within the booth rather than deploying additional spray. The evidence does not support an inference that the amount of force was excessive in relation to the need for Phillips to comply with orders and return to his cell.

**3. Extent of injury**

This factor weighs in Caseworker Knotts's favor as well. Phillips was exposed to a brief spray of OC. Phillips testified that he only suffered from blurred vision, which medical staff stated was a temporary symptom from the spray. Dkt. 48-1 at 31-32. Phillips has not identified evidence of any long-term or permanent injuries.

**4. Extent of threat to safety**

This factor also weighs in Caseworker Knotts's favor. This factor contemplates "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them." *McCottrell*, 933 F.3d at 663. It is undisputed that Phillips did not at any point attempt to cuff up prior to the use of force. The video confirms that Phillips made no steps toward compliance until after the OC spray was administered. Dkt. 48-6. Phillips was refusing a direct order and, again, "[o]rders given must be obeyed." *Soto*, 744 F.2d at 1267. No reasonable jury would conclude that an unrestrained inmate who is denying the authority of a correctional officer is not a safety threat.

**5. Efforts made to temper severity of force**

The final factor also favors Caseworker Knotts. She used only one to two seconds of OC spray. Phillips identifies no evidence in the record that would support an inference that, to gain Phillips's compliance, Caseworker Knotts used more force than necessary.

* * *

The undisputed evidence viewed in its totality shows there was a need for Caseworker Knotts to use force, a reasonable relationship between that need and the amount of force used, minimal injury suffered by Phillips, a reasonable apprehension of a threat to safety, and reasonable efforts to temper the severity of force used under the circumstances. A reasonable jury could not conclude that Caseworker Knotts's use of force was in any way "exaggerated or excessive," *Lewis*, 581 F.3d at 477, or malicious and sadistic, *Whitaker*, 144 F.4th at 922. Accordingly, Caseworker Knotts is entitled to summary judgment.

Further, if Caseworker Knotts's use of force was not excessive, Officer Tumulty and Sgt. Maynard similarly cannot be liable for any failure to intervene in an act of excessive force. Without an underlying constitutional violation, state actors cannot be liable for a failure to intercede. *Filmore v. Page*, 358 F.3d 496, 506 (7th Cir. 2004) ("Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention."). Defendants' motion for summary judgment on excessive force is **granted**.

**B. Eighth Amendment Deliberate Indifference Claims**

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is . . . enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

Defendants argue on summary judgment that the record does not demonstrate deliberate indifference to Phillips's condition after he was OC sprayed and released from the holding cell. The undisputed material facts show Phillips was not sprayed in his cell, so he was exposed to the spray only on his person. Phillips's cell had a sink with running water, and inmates in G Cellhouse were offered showers multiple times per week, at least as often as every third day. Dkt. 48-2 at 2–3.

The Seventh Circuit has held that "detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering." *Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005). The parties dispute whether Defendants offered him a decontamination shower after he was OC sprayed. But regardless, he had access to running water within his cell and could have washed his face after the incident. He also had access to showers every three days per IDOC policy and his own testimony. Dkt. 48-1 at 20. No reasonable juror could find that the IDOC defendants were deliberately indifferent under the circumstances. Summary judgment is **granted** for all Eighth Amendment deliberate indifference claims against all three Defendants.

### C. First Amendment Retaliation

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

The defendants dispute that Phillips's request to see a supervisor amounts to participation in protected activity. Inmates do have a First Amendment right to complain about prison staff, whether orally or in writing, so long as they do so in ways that are consistent with their status as prisoners. *Watkins v. Kasper*, 599 F.3d 791, 796–97 (7th Cir. 2010). However, "backtalk by prison inmates to guards, like other speech that violates prison discipline, is not constitutionally protected." *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015); *accord Ustrak v. Fairman*, 781 F.2d 573, 580 (7th Cir. 1986).

Here, the Court need not decide whether requesting to see a supervisor falls closer to an oral complaint or to backtalk. Even if Phillips's speech was protected activity, his claim would still fail because he has not shown that his request for a supervisor, rather than his refusal to submit to an order, was the motivating factor for Defendants' use of force.

**1. Deprivation likely to deter future First Amendment activity**

Whether allegedly retaliatory conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff." *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). Here, use of OC spray on an inmate would likely deter future First Amendment activity.

**2. Motivating factor**

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680 (internal

quotations omitted). This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats retaliatory arrest claim but not if plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not).

Defendants have presented evidence that the use of OC spray was caused by Phillips's refusal to cuff up and comply with orders, not his complaint or request to speak with a supervisor. The designated evidence indeed supports Defendants' argument, as summarized above. Phillips argues that because of his previous litigation activity and the nature of the legal documents, Caseworker Knotts's refusal to copy his documents or let him speak to a supervisor clearly shows that the incident was retaliatory. But Caseworker Knotts's refusals are explained by adherence to IDOC or internal Wabash Valley policy, not retaliation. *See Hale v. Scott*, 252 F. Supp. 2d 728 (C.D. Ill. 2003), *aff'd*, 371 F.3d 917 (7th Cir. 2004) ("Prison librarian's refusal to permit inmate to make photocopies of legal documents or to keep prison library open longer hours was not in retaliation for inmate's grievance and litigation pursuits, where policy requiring inmates to pay for photocopies and library hours applied to all inmates.").

Accordingly, summary judgment must be **granted** in Defendants' favor on Phillips's First Amendment retaliation claim.[3]

## IV. CONCLUSION

Phillips's motion for summary judgment, dkt. [44], is **DENIED**. Defendants' motion for summary judgment, dkt. [47], is **GRANTED**. Phillips's motion for final judgment, dkt. [66] is **GRANTED** to the extent the Court has now issued its order on the pending motions for summary judgment. Final judgment will now issue by separate entry.

**SO ORDERED**.

Date: 9/23/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

JAMES E. PHILLIPS
106333
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

All Electronically Registered Counsel

[3] The Court need not address whether Defendants are entitled to qualified immunity on any of Phillips's claims because no reasonable jury could conclude that Defendants violated his constitutional rights.